UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES G. WEBB, an individual,

      Plaintiff,

Case No. 2:19-cv-12528

v.

JOHN J. SLOSSON, in his individual
official capacity as an Oakland County
Deputy Sheriff, and the CITY OF PONTIAC,
a local municipality,

      Defendant.

_____/

## Civil Rights Complaint and
## Demand for Jury Trial

Plaintiff James G. Webb ("Webb") through counsel of record Attorney Hammad A. Khan pleads the following facts in support of his civil rights complaint against Oakland County Sheriff's Deputy John J. Slosson ("Slosson") and the City of Pontiac ("City").

## I. Introduction

1.  This case seeks to protect and vindicate fundamental constitutional rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.  Through the statutory vehicle 42 U.S.C. § 1983, Webb alleges that on June 5, 2018, Oakland County Deputy Sheriff Slosson unlawfully detained and

seized his person in retaliation for exercising the constitutionally protected right to freedom of speech.

2. Webb seeks a money judgment against Deputy Slosson and a declaration that while acting under color of state law, seizing a person and motor vehicle without probable cause or reasonable suspicion for playing the N.W.A. song "Fxxk the Police" from within a motor vehicle would chill others from exercising First Amendment freedoms.

3. Webb further seeks a declaration and injunctive relief against the City of Pontiac holding that Municipal Ordinance 58-203 is unconstitutionally void for vagueness and overbreadth—chilling the exercise of First Amendment freedoms—because it gives local prosecutors and law enforcement officers unfettered discretion to determine legality of protected conduct.

## II. Jurisdiction and Venue

4. Plaintiff Webb incorporates by reference complaint paragraphs one through three, as set forth fully here.

5. This Court has subject matter jurisdiction over the instant cause of action under 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. §§ 1983, 1988.

6. Webb's claims for declaratory and injunctive relief are further authorized by Federal Rules of Civil Procedure ("Fed. R Civ. P") 57 and 65, and by the general

legal and inherent equitable powers of this Court.  Title 42 U.S.C. §§ 1983 and 1988 authorize Plaintiff Webb's claims for damages and fees.

7.  Venue is proper under 28 U.S.C. § 1391(b) because Slosson resides, and a substantial part of the events or omissions giving rise to the claims occurred, in the district where this Court sits.

### III.  Parties

8.  Plaintiff Webb incorporates by reference complaint paragraphs one through seven, as set forth fully here.

9.  Webb is a natural person that domiciles in the City of Rustin, Parish of Lincoln, and State of Louisiana.

10.  Defendant Deputy Sheriff Slosson [Badge No. 01187] is a natural person believed to domicile in the County of Genesee and State of Michigan.

11.  At the time of the acts or occurrences alleged in this complaint, Defendant Slosson was acting under color of state law as a uniformed deputy sheriff for the County of Oakland, driving a marked police vehicle.

### IV.  Averment of Facts

12.  Plaintiff Webb incorporates by reference complaint paragraphs one through eleven, as set forth fully here.

13.  The police car dash cam video and audio mic worn by Deputy Slosson

recorded the incident as did the parking lot surveillance camera posted on the outside of the BP Gas Station.  **(Ex. 1-Police Car Video Recording; Ex. 2-BP Video Recording.)**

14. On June 5, 2018, Deputy Slosson stopped an unconnected motor vehicle for speeding in the parking lot of the BP Gas Station in the City of Pontiac.

15. At the same time, Plaintiff Webb stopped to get motor vehicle fuel at the gas pump parallel to Deputy Slosson's traffic stop.

16. Plaintiff Webb had the driver's side window of his motor vehicle open, audibly playing the song "Fxxk the Police" by N.W.A. from the interior stereo.

17. When Webb arrived Slosson commented to the driver of the vehicle stopped for speeding, "You think he's playing that song for me."  **(Ex. 1 at 0:09:56.)**

18. Webb entered the gas station with the stereo still playing.

19. Upon exit of the gas station and return to the motor vehicle, Slosson approached commanding Webb twice to produce his driver's license.  **(Ex. 1 at 0:10:51.)**

20. When Webb asked what for and commented he did nothing wrong, Slosson indicated playing the radio to loud is a noise violation [of] city ordinance.  **(Ex. 1 at 0:11:01.)**

21. Slosson said that if he can hear it, even at a traffic light, outside of 50 feet

4

that is a noise ordinance violation.  **(Ex. 1 at 0:11:05.)**

22.   Slosson told Webb that violating the local noise ordinance is a misdemeanor offense.  **(Ex. 1 at 0:21:28.)**

23.   In retaliation for Plaintiff Webb's exercise of First Amendment rights, Deputy Slosson wrote him a uniform law citation [ticket no. 18OS19960] for violating City of Pontiac non-vehicular noise ordinance 58-203:

> It shall be unlawful for any person to create, assist in creating, permit, continue or permit the continuance of any unreasonably loud, disturbing, unusual or unnecessary noise which annoys, disturbs, injures, or endangers the comfort, repose, health, peace, or safety of others within the limits of the City of Pontiac.  The time, location, and duration of the noise shall be considered by the enforcing officer to determine if the noise is unreasonable.  **[Ex. 3-Local Ordinance.]**[1]

24.  Slosson checked the misdemeanor box on the ticket and wrote in the remarks section, "gas station with song fxxk the police with extremely high-volume other customers present."  **(Ex. 4-Ticket.)**

25.  The state court record shows that violation of the noise ordinance is a misdemeanor criminal offense.  **(Ex. 5-Register of Actions.)**[2]

---

[1] 58-203, *General Prohibitions*, https://www.codepublishing.com/MI/Pontiac/html/ Pontiac58/Pontiac5804.html (last accessed Aug. 12, 2019.)

[2] Michigan Courts, *50th District*, https://micourt.courts.michigan.gov/CaseSearch/ Case/D50/Detail?searchText=James+Webb&caseId=18147895OM&courtType= D&courtNumber=500&locationNumber=0&courtSystem=1&partyTypeNumber= D01&caseType=OM&petitionNumber=null (last accessed August 13, 2019)

26. Webb retained counsel, pled not guilty to the offense, and requested a jury trial.

27. On December 10, 2018, the jury found Webb not guilty of violating the noise ordinance.

28. The trial, however, was a fraudulent sham because local ordinance 58-211 establishes a civil infraction penalty for violating section 58-203, not a misdemeanor criminal offense.

> Except as provided in section 58-210, an activity which violates this article shall be punishable by a fine of $50.00 to $500.00 plus costs. For a second offense within a two-year period, the fine shall be $100.00 to $500.00 plus costs. For third and subsequent offenses within a two-year period, the penalty shall be $200.00 to $500.00 plus costs and/or, in the discretion of the court, up to 240 hours community service. **[Ex. 6-Local Ordinance Penalty.]**

29. The state court transcript further shows that both the trial court judge and the municipal prosecutor wrongly averred violation of the noise ordinance is a criminal offense.

## V. Claims

*Count One—First Amendment Retaliation*
(Freedom of Speech)

30. Plaintiff Webb incorporates by reference complaint paragraphs one through twenty-nine, as set forth fully here.

31. Slosson acted under color of state law by detaining Plaintiff Webb and his

motor vehicle in the BP Gas Station parking lot for playing music unflattering to law enforcement.

32. Webb's choice of song, regardless of the underlying message carried, is a form of speech entitled to First Amendment protection.

33. Webb had a clearly established constitutional right of which a reasonable person would have known, to choose the genre of music played within his motor vehicle and the specific message delivered by that speech.

34. Slosson took adverse action against Webb by detaining and issuing him a ticket in retaliation for exercising the protected right.

35. Slosson's motive for issuing Webb the noise ordinance ticket and commanding him to produce a driver's license was punishment for exercising rights secured under the constitution.

36. The adverse action taken against Webb by Slosson would substantially interfere with the exercise of First Amendment freedoms by deterring a person of ordinary firmness from playing music that is unflattering or distasteful toward government or that contains language some might consider vulgar or offensive.

37. At the time of the occurrence, the contours of the First Amendment were sufficiently clear that a reasonable person in Slosson's shoes would understand that what he was doing to Webb violated the protected right.

38. As a direct and proximate result of Slosson's retaliatory animus Webb suffered irreparable harm, including the loss of constitutional free speech protections—chilling him and others from further exercise of the right—entitling him to declaratory and injunctive relief and damages.

*Count Two—Fourth Amendment*
(Unlawful Detention and Seizure)

39. Plaintiff Webb incorporates by reference complaint paragraphs one through thirty-eight, as set forth fully here.

40. Slosson interfered with Webb's fundamental liberty interests by detaining and seizing him, without probable cause to believe a traffic violation had occurred or reasonable suspicion that criminal activity was afoot.

41. Slosson's pretrial detention and seizure of Webb while acting under color of state law violated the Fourth Amendment, applicable to the states through the Fourteenth Amendment, right to freedom of movement without unlawful government interference or restraint.

42. Slosson's issuance of a misdemeanor ordinance ticket for a civil infraction offense and verbal commands—while armed, in uniform, and driving a marked police vehicle—for Webb to produce his driver's license was a show of authority for an unlawful reason.

43. Webb was seized within the meaning of the Fourth Amendment because a

reasonable person would not have felt free to leave when Slosson took his driver's license and began issuing him a misdemeanor citation for violating local ordinance.

44. At the time of the occurrence in controversy, Fourth Amendment rights were sufficiently clear that a reasonable person in Slosson's shoes would know that the detention and seizure of Webb's person and motor vehicle, without probable cause or reasonable suspicion, was unconstitutional arbitrary and oppressive conduct.

45. Slosson's continuing detention and seizure of Webb without probable cause after initiation of the legal process by persuading the state court and local prosecutor with false statements that violation of local noise ordinance 58-203 is a misdemeanor, resulted in further confinement without constitutionally adequate justification under the Fourth Amendment.

46. As a direct and proximate result of Slosson's retaliatory animus causing the unlawful detention and seizure, Webb suffered irreparable harm—including the temporary loss of fundamental liberty interests—entitling him to declaratory and injunctive relief and damages.

### Count Three—False Arrest
(Federal Common Law)

47. Plaintiff Webb incorporates by reference complaint paragraphs one through forty-six, as set forth fully here.

48. Slosson lacked probable cause for the arrest because in his mind, the facts and circumstances would not be sufficient to warrant a prudent person believing Webb had committed or was about to commit a crime when the charged offense amounted to a civil infraction punishable only by a $50 fine and costs.

49. Slosson further failed to act in good faith and lacked probable cause for the initial seizure within the meaning of the Fourth Amendment because an objectively reasonable person in his shoes would understand that criminally prosecuting Webb for a misdemeanor offense punishable only as civil infraction, would violate the right.

50. An objectively reasonable person in Slosson's shoes would have known he or she was contravening a clearly established right by arresting Webb because he could not have committed a crime when the charged offense is published as a noncriminal civil infraction only punishable by a fine and costs.

51. As a direct and proximate result of Slosson's retaliatory animus resulting in the unlawful detention and seizure, Webb suffered irreparable harm—including the temporary loss of fundamental liberty interests—entitling him to declaratory and injunctive relief and damages.

*Count Four—False Imprisonment*
(Federal Common Law)

52. Plaintiff Webb incorporates by reference complaint paragraphs one through

fifty-one, as set forth fully here

53. Slosson wrongfully instituted legal process against Webb for an offense that was not criminal.

54. Slosson made false statements that persuaded the state court and local prosecutor into believing violation of local noise ordinance 58-203 is a crime, when in fact it is a noncriminal offense.

55. Slosson confined Webb without probable cause, consent, or authority of law.

56. Slosson bounded Webb by limiting his freedom of movement so that the only means of escape while being unlawfully detained and seized, would result in the risk of physical harm.

57. Slosson accomplished the wrongful confinement by misusing the authority of a police officer's badge for an unlawful purpose, while acting under color of state law.

58. Webb was aware of the confinement because an objectively reasonable person in the same circumstances would not be able to leave, considering Slosson took Webb's driver's license and began issuing and issued him a misdemeanor ticket.

59. Had Webb tried to escape, Slosson would have undoubtedly used physical force or restraint to continue the confinement.

60.  As a direct and proximate result of Slosson's retaliatory animus resulting in the unlawful imprisonment, Webb suffered irreparable harm—including the temporary loss of fundamental liberty interests—entitling him to declaratory and injunctive relief and damages.

*Count Five—Malicious Prosecution*
(Federal Common Law)

61.  Plaintiff Webb incorporates by reference complaint paragraphs one through sixty, as set forth fully here.

62.  Slosson initiated a criminal prosecution by issuing Webb a misdemeanor citation for violation of local noise ordinance 58-203.

63.  Slosson made, influenced, or participated in the decision to prosecute by misleading the trial court and municipal prosecutor with false statements that violation of local noise ordinance 58-203 is a criminal offense punishable by jail as a misdemeanor, when in fact it is a civil infraction.

64.  There was no probable cause for the criminal prosecution because a civil infraction is not a crime.  Mich. Comp. Laws § 600.113(1)(a).

65.   As a consequence of the legal proceeding, Webb suffered a deprivation of liberty under the Fourth Amendment apart from the initial seizure because for more than six months he anticipated a criminal trial and impending adjudication of his guilt by a jury—while every day fearing the possibility of having a criminal

record, serving jail time, in addition to up to two years of court ordered supervised probation—for a civil infraction offense, only punishable by a fine of $50.00 to $500.00 plus costs.

66. Webb was further compelled to appear before the state court multiple times, subject to the threat of contempt or arrest if he did not comply.  **(Ex. 7-Notice to Appear.)**

67. The criminal prosecution ended in Webb's favor on December 10, 2018, when the jury found him not guilty.  **(Ex. 8-Trial Transcript.)**

68. Webb had a clearly established constitutional right under the Fourth Amendment, applicable to the states through the Fourteenth Amendment, to be free from malicious prosecution for a criminal offense that is a noncriminal civil infraction unpunishable by incarceration.  Mich. Comp. Laws § 750.5.

69. Slosson either recklessly or knowingly made false statements material to the prosecution by saying multiple times in writing and by word of mouth that violating ordinance 58-203 is a misdemeanor offense when it is not.  Mich. Comp. Laws § 750.8.

70. At the time of the occurrence in controversy, a reasonable official in Slosson's shoes would know Webb had a sufficiently contoured constitutional right not to be hauled into court for a misdemeanor offense that is a civil infraction

punishable only by a fine of $50.00 to $500.00 plus costs.

71. As a direct and proximate result of Slosson's malicious prosecution Webb suffered irreparable harm—including the loss of fundamental liberty interests for months, the possible loss of freedom by incarceration, and the loss of First Amendment protections—entitling him to declaratory and injunctive relief and damages.

*Count Six—Void for Vagueness Doctrine*
(City of Pontiac Noise Ordinance 58-203)

72. Plaintiff Webb incorporates by reference complaint paragraphs one through seventy-one, as set forth fully here.

73. City of Pontiac Local Ordinance 58-203 is void for vagueness under the Due Process Clause of the Fourteenth Amendment, facially and as applied, because it fails (a) to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited, (b) gives police, judges, prosecutors, and juries unfettered discretion to arbitrarily determine whether there is a violation, and (c) substantially inhibits the exercise of First Amendment freedoms.

74. In relevant part, the local ordinance makes it unlawful for any person to create, permit, continue, or assist in creating "any unreasonably loud, disturbing, unusual, or unnecessary noise which annoys, disturbs, injures, or endangers the comfort, repose, health, peace, or safety of others within the limits of the City of

Pontiac."

75.  The ordinance does not have (a) a scienter element, (b) ascertainable standards for determining whether noise is unreasonably loud, disturbing, unusual, or unnecessary, or (c) ascertainable standards defining the words annoys, disturbs, injures, comfort, or peace.

76.  The ordinance further does not narrowly define who is the complainant thus giving law enforcement unfettered discretion to be both the person that decides whether the noise is unnecessary or disturbing—endangering their comfort, repose, or peace—and the enforcing official that determines lawfulness, i.e., whether the time, location, and duration of the noise is unreasonable.

77.  As written, the ordinance substantially inhibits the exercise of constitutionally protected First Amendment freedoms because what is unreasonably loud, disturbing, unusual, or unnecessary noise to one person can widely differ from others, giving police the opportunity to selectively punish and arbitrarily enforce, the provision on anyone they subjectively choose worthy of displeasure.

78.  As written, the ordinance further substantially inhibits the exercise of protected speech that might be unflattering toward, or distasteful to, government officials anywhere in the City, including inside one's own home, anytime law

enforcement disagrees with or is affronted by the message delivered, such as here when Webb played the song Fxxk the Police in his motor vehicle within hearing distance of Deputy Slosson.

79.  This Court should declare that local ordinance 58-203 is unconstitutional facially and as applied and grant injunctive relief so the ordinance can no longer be used in an arbitrary, discriminatory, or retaliatory manner to inhibit or punish the exercise of protected speech.

80.  As a direct and proximate result of Slosson using the unconstitutional ordinance in a retaliatory manner Webb suffered irreparable harm, including the loss of First Amendment protections—chilling him and others from further exercise of the right—entitling him to declaratory and injunctive relief and damages against the enforcing official and the City of Pontiac.

*Count Seven—First Amendment Overbreadth*
(City of Pontiac Noise Ordinance 58-203)

81.  Plaintiff Webb incorporates by reference complaint paragraphs one through eighty, as set forth fully here.

82.  The ordinance in controversy inhibits pure speech, not conduct.

83.  The noise ordinance in controversy is substantially overbreadth both facially and as applied because it inhibits the exercise of free speech by delegating basic policy matters to policemen, judges, and juries for resolution on an ad hoc and

subjective basis, with the attendant dangers of arbitrary and discriminatory application.

84. Even if the noise ordinance might in some hypothetical and rare situations lawfully prohibit unprotected speech, it is not narrowly tailored to serve a compelling state interest because the overly broad language incorporates virtually any type of verbal expression pronounced anywhere in the City inviting discriminatory enforcement—as it did in the instant matter against Webb—when the enforcing government official unilaterally exercises unrestrained power to punish words he or she determines unreasonably loud, disturbing, unusual, or unnecessary noise that annoys, disturbs, injures, comfort, or peace.

85. The loosely worded text of the ordinance further reaches so far into the protected arena that it completely quells the constitutional right to voice displeasure, dissatisfaction, or disagreement with government by allowing the enforcing official to classify virtually any speech unlawful that he or she determines to carry an affronting undertone, as in the instant case where Webb played the 1988 N.W.A. song "Fxxk the Police" from his motor vehicle in a gas station, within earshot of Deputy Slosson.

86. This Court should declare that as written, both facially and as applied in this particular case, local ordinance 58-203 is overbreadth inhibiting the exercise of First Amendment freedoms and grant injunctive relief against enforcement to end

the ongoing derogation of constitutionally protected rights.

87.  As a direct and proximate result of Slosson using the unconstitutional

ordinance in a retaliatory manner Webb suffered irreparable harm, including the

loss of First Amendment protections—chilling him and others from further

exercise of the right—entitling him to declaratory and injunctive relief and

damages against the enforcing official and the City of Pontiac.

## VI.  Prayer for Relief

Wherefore, Plaintiff Webb asks this Court,

A)   to declare that Defendant Slosson violated his fundamental
     constitutional rights as pled in this Complaint;

B)   to permanently enjoin Defendant Slosson from unlawfully
     detaining and seizing persons and motor vehicles, in retaliation
     for exercising constitutionally protected First Amendment
     freedoms as pled in this Complaint;

C)   to issue an award of nominal, actual, compensatory, and punitive
     damages against Defendant Slosson,

D)   to award him reasonable attorney fees, costs, and expenses under
     42 U.S.C. § 1988 and other applicable law,

E)   to declare City of Pontiac Noise Ordinance 58-203
     unconstitutionally void for vagueness and overbreadth inhibiting
     the exercise of protected First Amendment freedoms, and

F)   to grant such other and further relief as this Court finds just and proper
     under the circumstances.

Respectfully submitted,

|                                  |                                        |
|----------------------------------|----------------------------------------|
|                                  | ____/s/ Hammad A. Khan____             |
|                                  | Blackstone Law, PLLC                   |
|                                  | Hammad A. Khan (P80039)                |
|                                  | Counsel for Plaintiff Webb             |
|                                  | 1 Ajax Drive, Ste 101                  |
|                                  | Madison Heights, MI 48071              |
| Dated: September 27, 2019        | P: (248) 951-8111                      |
|                                  | F: (734) 418-8326                      |
|                                  | hkhan@blackstonelawpllc.com            |

### Jury Trial Demand

Under Federal Rule of Civil Procedure 38, Plaintiff Webb requests a jury

trial on all issues so triable by right under rule, law, or controlling authority.


|                                  |                                        |
|----------------------------------|----------------------------------------|
|                                  | Respectfully submitted,                |
|                                  |                                        |
|                                  | ___/s/ Hammad A. Khan____              |
|                                  | Blackstone Law, PLLC                   |
|                                  | Hammad A. Khan (P80039)                |
|                                  | Counsel for Plaintiff Webb             |
|                                  | 1 Ajax Drive, Ste 101                  |
|                                  | Madison Heights, MI 48071              |
| Dated: September 27, 2019        | P: (248) 951-8111                      |
|                                  | F: (734) 418-8326                      |
|                                  | hkhan@blackstonelawpllc.com            |